IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**RALPH LEWIS READ,**

                        Plaintiff,                                    No. 3:12-cv-02021-MO

            v.                                                OPINION AND ORDER

**KATHLEEN HALEY et al.,**

                        Defendants.


**MOSMAN, J.**,

            Defendants Kathleen Haley, Warren Foote, Dove Gutman, Dr. Douglas Kirkpatrick, and

Dr. Lisa Cornelius move to dismiss [8][1] claims brought by pro se plaintiff Ralph Lewis Read.  I

GRANT defendants' motion based on the *Rooker-Feldman* doctrine, absolute immunity, and

failure to comply with Rule 9(b).

## BACKGROUND

I.      <u>Facts</u>

            Mr. Read filed a convoluted, 132-page complaint [1] alleging fraud and numerous

constitutional violations under 42 U.S.C. § 1983.  Mr. Read's allegations surround the revocation

of his medical license by the Oregon Medical Board (the "Board") and the review of the Board's

---

[1] Defendants do not cite authority under the Federal Rules of Civil Procedure for their motion.  They argue both that the Court lacks subject-matter jurisdiction and that Mr. Read has failed to state a claim upon which relief can be granted.  Therefore, I construe their motion to be brought under Rules 12(b)(1) and 12(b)(6).

actions by the Oregon Court of Appeals. *See In re Ralph Lewis Read, MD*, Oregon Medical

Board (Jan. 14, 2010);[2] *Read v. Or. Med. Bd.*, 244 Or. App. 603, 260 P.2d 771 (2011). While

Mr. Read's pro se complaint is difficult to follow and contains little factual background, the

Final Order of the Board and the Opinion of the Oregon Court of Appeals provide additional

context for Mr. Read's claims.[3]

Mr. Read was a diagnostic radiologist who received his license to practice medicine in

Oregon in 1999. The administrative rules of the Board require that a person who practices

medicine in the State of Oregon register with the Board every two years and pay a biennial

"active status" registration fee. Or. Admin. R. 847–008–0015; 847–008–0040. If a person

licensed to practice medicine ceases to practice for a period of 12 or more consecutive months,

the Board in its discretion may require the person to prove to its satisfaction that the licensee has

maintained competence. Or. Rev. Stat § 677.175(2); Or. Admin. R. 847–008–0040(5). When a

physician has been out of practice for a number of years, it is the Board's practice to change the

status of the license to "inactive." *Read*, 244 Or. App. at 606, 260 P.2d at 772.

On November 30, 2007, Mr. Read applied for renewal of his active status. The renewal

application requires the applicant to provide information about his or her practice over the

preceding several years and to disclose any arrests or convictions. Mr. Read disclosed that he

had been unemployed since 2003 and had ceased the active practice of medicine in his specialty.

He also disclosed that he had been arrested and charged with disorderly conduct in August 2006.

Subsequently, Mr. Read wrote letters to the Board explaining that he had become unemployed

---

[2] *Available at* https://techmedweb.omb.state.or.us/Clients/ORMB/Public/..%5COrderDocuments%5Cb506e7fe-85b0-4354-9659-cb8a167ee21e.pdf

[3] On a motion to dismiss, a court may take judicial notice of facts outside the pleadings that are matters of public record, such as records or reports from courts or administrative bodies. *See* Fed. R. Evid. 201; *Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1387 & n.9 (9th Cir. 1987). I therefore take judicial notice of these documents in reaching a conclusion in this case.

when the Woodland Park Hospital closed and that the disorderly conduct charge had arisen out

of a false allegation that he had abused his dog.  *Id*. at 605–06, 260 P.2d at 772.

On March 12, 2008, the Board's Administrative Affairs Committee examined Mr. Read's

application and recommended that the status of his license be changed to inactive.  The full

Board later ratified the Committee's recommendation.  On April 14, 2008, the Board informed

Mr. Read that if he wanted to return his license to active status, he must undergo an evaluation

from either the Center for Personalized Education for Physicians (the "CPEP") or the Physician

Assessment and Clinical Education Program (the "PACE").  The Board stipulated that the

evaluation must include an assessment of Mr. Read's medical knowledge, clinical skills, and

psychiatric health.  *Id*. at 606, 260 P.2d at 772.

Pursuant to Board procedures, Mr. Read requested an investigative interview with the

Board's Investigation Committee to challenge the Board's decision.  On June 5, 2008, the

Committee conducted an investigative interview with Mr. Read.  The Committee was comprised

of seven members of the Board, including defendants Kathleen Haley, Dr. Lisa Cornelius, and

Dr. Douglas Kirkpatrick.  Mr. Read's responses to the Committee's questions about his

qualifications to practice medicine and the extent to which he had maintained his medical skills

were evasive, nonresponsive, and combative.  At the interview, Mr. Read stated that his only

purpose in meeting with the Investigation Committee was to exhaust his administrative remedies.

On June 11, 2008, the Board informed Mr. Read that his medical license would remain inactive

due to his failure to provide the Board with the additional information it had requested.  *Id*. at

607–08, 260 P.2d at 773.

On July 20, 2008, Mr. Read again asked the Board to change the status his license to

active and also requested administrative review of the Board's decision.  On September 3, 2008,

the Board issued an Order for Evaluation requiring that within 90 days Mr. Read successfully complete an evaluation by the CPEP, including a psychiatric evaluation. The Board further advised Mr. Read that his failure to comply with the order would constitute a violation of Or. Rev. Stat. § 677.190(18) (2008)[4] and could result in disciplinary action. Mr. Read then sent an email to the CPEP, which the Oregon Court of Appeals described as a semi-coherent rant. The CPEP did not respond to that email, and Mr. Read never underwent the required evaluation. *Id*. at 608–10, 260 P.2d at 773–74.

On January 8, 2009, the Board issued a Complaint and Notice of Proposed Disciplinary Action (the "Board Complaint") pursuant to Or. Rev. Stat. § 677.205 for violations of the Medical Practice Act, specifically violations of Or. Rev. Stat. § 677.190(1)(a) (unprofessional or dishonorable conduct) and Or. Rev. Stat. § 677.190(18) (2008) (willful violation of a Board order). The Board Complaint advised Mr. Read that he was entitled to a hearing. Mr. Read then wrote a letter to the Board in which he stated that he was surrendering his medical license and requested a hearing. *Read*, 244 Or. App. at 610. 260 P.2d at 774.

On May 28, 2009, a hearing was held before Senior Administrative Law Judge Dove Gutman, a defendant in this case. Senior Assistant Attorney General Warren Foote, also a defendant in this case, represented the Board at the hearing. ALJ Gutman issued a proposed order finding that (1) Mr. Read's failure to answer the Board's questions before the Investigation Committee amounted to unprofessional or dishonorable conduct; (2) the alleged dog abuse incident did not involve unprofessional or dishonorable conduct; and (3) Mr. Read did not willfully disobey the Board's order to obtain a psychiatric evaluation at the CPEP because the CPEP did not perform such evaluations. *Id*. at 610, 260 P.2d at 774–75.

---

[4] The current number is Or. Rev. Stat. § 677.190(17).

On January 14, 2010, the Board issued a Final Order. Like ALJ Gutman, the Board found that Mr. Read's refusal to answer questions at the investigative interview constituted unprofessional or dishonorable conduct in violation of Or. Rev. Stat. § 677.190(1)(a) and that there was no such conduct in the alleged dog abuse incident. Unlike ALJ Gutman, however, the Board found that Mr. Read had violated Or. Rev. Stat. § 677.190(18) (2008) by failing to undergo an evaluation by the CPEP. The Board then ordered Mr. Read's license revoked, imposed a civil penalty of $10,000, and assessed the cost of the disciplinary proceedings, which amounted to $14,599.05. *Read*, 244 Or. App. at 611, 260 P.2d at 772.

Mr. Read sought judicial review of the Board's decision before the Oregon Court of Appeals. On August 3, 2011, the Oregon Court of Appeals remanded the Board's decision for reconsideration of the $10,000 civil penalty but otherwise affirmed. *Id*. at 605, 260 P.2d at 771. On January 1, 2012, the Board issued a Final Order on Remand without imposing the $10,000 civil penalty. *See In re Ralph Lewis Read, MD*, Oregon Medical Board (Jan. 12, 2012).[5] And on March 8, 2012, the Oregon Supreme Court denied review without opinion. *Read v. Or. Med. Bd.,* 351 Or. 649, 275 P.3d 968 (2012).

## II.    The Complaint

Mr. Read's 132-page complaint lacks both structure and coherence. (Compl. [1].) Despite these obstacles, the Court construes pro se pleadings liberally, affording a pro se plaintiff the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). Construing Mr. Read's complaint as liberally as I can, I find that he asserts five claims: (1) the Order for Evaluation was a "sham" intended to punish him for repeatedly requesting review of Board actions, in violation of the First

---

[5] *Available at* https://techmedweb.omb.state.or.us/Clients/ORMB/Public/..%5COrderDocuments%5Cd9fc0c0d-a04e-40d6-b724-c16fc779ba87.pdf

Amendment, (Compl. [1] at 7–9); (2) the Board's statutory authority to issue orders violates

Article I, Section 10 of the United States Constitution, (*Id*. [1] at 8); (3) the Board's actions

against Mr. Read violated the Equal Protection Clause of the Fourteenth Amendment, (*Id*. [1]);

(4) defendants falsified the record at the investigative interview and ALJ hearing, (*Id*. [1] at 7, 9);

and (5) defendants deprived him of his liberty and property interests without due process, in

violation of the Fourteenth Amendment,[6] (*Id*. [1] at 6–9).

## LEGAL STANDARDS

### I.  <u>Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1)</u>

When a defendant moves to dismiss an action pursuant to Rule 12(b)(1) for lack of

subject-matter jurisdiction, the plaintiff bears the burden of establishing that the Court does,

indeed, have jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994).

The Court will grant defendant's motion if the complaint fails to allege facts sufficient to

establish subject-matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039

n.2 (9th Cir. 2003). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by

presenting evidence to refute the jurisdictional facts alleged in the complaint. *Id*.  Once the

defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence

necessary to satisfy its burden of establishing subject matter jurisdiction." *Id*.

### II.  <u>Failure to State a Claim Pursuant to Rule 12(b)(6)</u>

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  To survive a Rule 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[6] Mr. Read also claims that defendants deprived him of his liberty and property interests without due process in violation of the Fifth Amendment, but he fails to identify a federal actor.

*Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

## DISCUSSION

Defendants argue that Mr. Read's claims are barred under: (1) the *Rooker-Feldman* doctrine; (2) the relevant statutes of limitations; (3) the Eleventh Amendment; and (4) absolute immunity.  (Mem. [9] at 2–5.)

## I.  *Rooker-Feldman* **Doctrine**

"*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004).  In addition to barring direct review, the doctrine prevents a federal court from considering any claims that amount to a collateral attack on issues that are "inextricably intertwined" with the state court's decision.  *Noel v. Hall*, 341 F.3d 1148, 1156–58 (9th Cir. 2003).

The doctrine is not absolute, however.  "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id*. at 1164.  Therefore, *Rooker-Feldman* "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."  *Kougasian*, 359 F.3d at 1141.

A.    *Non-Fraud Claims*

Mr. Read asserts three non-fraud claims: (1) the Order for Evaluation was a "sham" intended to punish him for repeatedly requesting review of Board actions, in violation of the First Amendment, (Compl. [1] at 7–9); (2) the Board's statutory authority to issue orders violates Article I, Section 10 of the United States Constitution, (*Id*. [1] at 8); and (3) the Board's actions against Mr. Read violated the Equal Protection Clause of the Fourteenth Amendment, (*Id*. [1]). The *Rooker-Feldman* doctrine bars subject matter jurisdiction over these claims since they are "inextricably intertwined" with the Board's Final Order, which was affirmed by the Oregon Court of Appeals.  Accordingly, the Court lacks jurisdiction over the three non-fraud claims.

B.    *Fraud-Based Claims*

Mr. Read claims that defendants falsified the record at the investigative interview and ALJ hearing.  (Compl. [1] at 7, 9.)  He also claims that he was deprived of his liberty and property interests without due process and that this deprivation eliminated his income, damaged his reputation, and caused him severe emotional distress.  (*Id*. [1] at 6–9.).  This due process claim appears to be based on the allegation that the Order for Evaluation, Board Complaint, and Final Order were tainted by a falsified record at the investigative interview and ALJ hearing:

> The information used to justify creation and to create the wording of the [Order for Evaluation] must have been falsified because the [Order] is not needed by the [Board], and is totally impossible to comply with, these falsifications act to deny due process on the Complaint . . . And there are multiple falsifications related to the Complaint and the hearing on the complaint, all of which acted to deny legitimate due process on the deprivation threatened by the Complaint.

(Compl. [1] at 7–8.)  Therefore, both Mr. Read's claim that defendants falsified the record and his claim that defendants deprived him of his liberty and property interests without due process amount to allegations of extrinsic fraud on the Oregon Court of Appeals, which affirmed the Board's Final Order.  Because *Rooker-Feldman* does not bar subject matter jurisdiction over a

claim of extrinsic fraud upon a state court, this Court has jurisdiction over these claims. *See Kougasian*, 359 F.3d at 1141.

In light of my analysis of the non-fraud claims in the preceding section, I will consider only Mr. Read's fraud-based claims in the remainder of this opinion.

## II.    <u>Statute of Limitations</u>

### A.    *State Law Fraud*

In Oregon, a fraud claim must be commenced within two years of the discovery of the fraud or deceit. Or. Rev. Stat. § 12.110(1). Oregon courts have clarified that "a fraud claim accrues when the plaintiff has discovered facts *or*, in the exercise of reasonable diligence, should have discovered facts that would alert a reasonable person to the existence of the three elements of an actionable injury, which are (1) harm, (2) causation, and (3) tortious conduct—*viz.*, the alleged fraud." *Murphy v. Allstate Ins. Co.*, 251 Or. App. 316, 324, 284 P.3d 524, 528 (2012) (emphasis in original); *see also Gaston v. Parsons*, 318 Or. 247, 256, 864 P.2d 1319, 1324 (1994).

Mr. Read's fraud claim appears to be based on the allegation that defendants falsified the record at the investigative interview and ALJ hearing. On the record before me, it is unclear when Mr. Read should have known about these alleged falsifications. Therefore, I am unable to determine at this time whether Mr. Read's state law fraud claim is time-barred.

### B.    *Fraud-Based Due Process*

Because § 1983 does not contain a statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in § 1983 suits. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Oregon's personal injury statute of limitations is two years. See Or. Rev. Stat. § 12.110(1); *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). Federal law determines

when a cause of action accrues and the statute of limitations begins to run on a § 1983 claim. *Wallace*, 549 U.S. at 388. Accordingly, the two-year limitations period begins to run when a plaintiff knows or has reason to know of the injury forming the basis of the action. *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002).

In this case, Mr. Read's due process claim appears to be based on the allegation that the Order for Evaluation, Board Complaint, and Final Order were tainted by a falsified record at the investigative interview and ALJ hearing. Again, on the record before me, it is unclear when Mr. Read should have known about these alleged falsifications. As a result, I am similarly unable to determine at this time whether Mr. Read's due process claim is time-barred.

## III.    Eleventh Amendment Immunity

Mr. Read seeks money damages from all defendants. The Eleventh Amendment bars damages actions against state officials who are sued in their official capacity. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). In contrast, the Eleventh Amendment does not bar damages actions against state officials who are sued in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). In *Hafer*, the Supreme Court explained that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id*. at 26.

In his complaint, Mr. Read names all defendants in their "individual capacity, not official capacity."[7] (Compl. [1] at 2–4.) Therefore, Mr. Read's remaining claims are not barred by the Eleventh Amendment.

---

[7] Mr. Read also lists Ms. Haley in her official capacity for the purpose of enjoining the implementation of State laws that are alleged to violate the United States Constitution. (Compl. [1] at 2.) As discussed in Part I, the Court lacks jurisdiction over this claim.

III.     **Absolute Immunity**

Although officials sued in their individual capacities are not entitled to Eleventh Amendment immunity, they may still assert personal immunity defenses. *Hafer*, 502 U.S. at 25. As discussed below— with the exception of the unnamed employee(s) of the Oregon Medical Board who lack immunity on Mr. Read's state law fraud claim—all defendants are entitled to absolute immunity on Mr. Read's fraud-based claims.

A.     *State Law Fraud*

1.     **ALJ Gutman**

Under Oregon law, judges are immune from personal liability for acts taken in the performance of judicial business unless jurisdiction for their actions is clearly absent. *See Utley v. City of Independence*, 240 Or. 384, 386–87,402 P.2d 91, 92–93 (1965).  However, immunity for judicial acts extends beyond judges: "[j]udicial immunity is granted or withheld on the basis of the nature of the function being performed, and not on the basis of the office." *Praggastis v. Clackamas County*, 305 Or. 419, 427, 752 P.2d 302, 307 (1988).  To determine whether a particular duty can be considered judicial or quasi-judicial for the purpose of extending immunity to the official performing the action, the court should consider "whether the official's actions are functionally comparable to judicial actions or involve decisions normally performed by judges in their judicial capacity, whether the action depends on legal opinions or discretionary judgments comparing the facts of a present situation with general legal questions, and whether the acts in question are primarily concerned with the official's role as a judicial or quasi-judicial officer." *Id.*, 752 P.2d at 307.

Here, ALJ Gutman's relevant actions are functionally comparable to judicial actions, depend on legal opinions, and are primarily concerned with her role as a judicial officer. Therefore, she is entitled to absolute immunity on Mr. Read's state law fraud claim.

### 2.      Members of the Oregon Medical Board, Mr. Foote, and Unknown Employees of the Oregon Medical Board

The Oregon Legislature has provided members of the Oregon Medical Board, members of its administrative and investigative staff, medical consultants, and its attorneys acting as prosecutors or counsel with the same immunity from civil proceedings arising out of their official actions as prosecuting and judicial officers of the state.  Or. Rev. Stat. § 677.335(1)

The members of the Oregon Medical Board are expressly mentioned in the statute, Mr. Foote acted as counsel for the Board at the ALJ hearing, and the unknown employees of the Oregon Medical Board are presumably either administrative or investigative staff.  Moreover, Mr. Read's state law fraud claim clearly arises out of these defendants' official actions. Consequently, they all fall within Or. Rev. Stat. § 677.335(1), and they are all entitled to immunity on Mr. Read's state law fraud claim.

### B.      *Fraud-Based Due Process*

### 1.      ALJ Gutman

Under federal law, judges have absolute immunity in suits for money damages based on their judicial conduct. *See Mireles v. Waco,* 502 U.S. 9, 9–10 (1991).  Administrative law judges are similarly accorded absolute immunity for their judicial acts. *Butz v. Economou*, 438 U.S. 478, 513–14 (1978).  Therefore, ALJ Gutman is entitled to absolute immunity on Mr. Read's due process claim.

### 2.    Members of the Oregon Medical Board

The Ninth Circuit and the District of Oregon have held that individual members of a state

medical board are entitled to absolute immunity for quasi-judicial or quasi-prosecutorial acts in a

§ 1983 case.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 925–26 (9th Cir. 2004);

*Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999); *Gambee v. Cornelius*, 2011 WL 1311782,

*6 (D. Or. Apr. 1, 2011); *Gambee v. Williams*, 971 F. Supp. 474, 477 (D. Or. 1997).

Absolute immunity may extend to state officials who perform functions analogous to

those of a judge or prosecutor.  *Butz*, 438 U.S. at 512–17.  In *Butz*, the Supreme Court outlined

several factors that aid in the determination of whether to grant a state official absolute

immunity.  These factors include:

> (a) the need to assure that the individual can perform his functions without
> harassment or intimidation; (b) the presence of safeguards that reduce the need for
> private damages actions as a means of controlling unconstitutional conduct; (c)
> insulation from political influence; (d) the importance of precedent; (e) the
> adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

### a)    Performance of Functions Without Harassment

The Oregon Medical Board is responsible for protecting the health, safety, and welfare of

residents from the practice of medicine by unauthorized or unqualified persons.  Or. Rev. Stat. §

677.015.  The Board has the power to discipline medical practitioners by suspending, revoking,

or placing limitations on their licenses.  *Id*. § 677.205(2).  Because the exercise of the Board's

power to suspend or revoke a physician's license is "likely to stimulate numerous damages

actions," *Mishler*, 191 F.3d at 1004, granting immunity protects Board members from

harassment and intimidation in the performance of their quasi-judicial functions.  *Olsen*, 363

F.3d at 924.

#### b)        Safeguards Reducing Need for Private Damages Actions

The Board performs its duties under the provisions of Oregon's Administrative

Procedures Act and an independent statutory scheme.  *See* Or. Rev. Stat. §§ 183.310–183.750,

677.010–677.990.  As noted previously, the Board has the power to discipline medical

practitioners by suspending, revoking, or placing limitations on licenses.  *Id*. § 677.205(2).

Before the Board can revoke or suspend a license, however, it must conduct a contested case

hearing.  *Id*. § 677.208(1).  Hearings must take place in front of an ALJ.  *Id*. §§ 183.615(1),

183.625(2), 183.635(1).  Physicians may elect to retain counsel and to respond to and present

evidence at the hearing.  *Id*. § 183.417(1).  Testimony at the hearing is taken under oath.  *Id*. §

183.417(6).  The ALJ is not bound by formal rules of evidence, but rules of privilege, relevance,

documentary evidence, and cross-examination generally apply.  *Id*. § 183.450.

The ALJ presents a proposed order to all parties and the agency.  *Id*. § 183.650(1).  The

agency may modify the order but must provide a written explanation for its modifications.  *Id*. §

183.650(2).  Final orders must be based on a consideration of the whole record and must be

supported by substantial evidence.  *Id*. § 183.450(5).  The final order must be accompanied by

findings of fact and conclusions of law.  *Id*. § 183.470(2).  And at that point, any person

aggrieved by an order may seek judicial review. *Id*. § 183.480.

Consequently, the procedural safeguards provided by Oregon statutes reduce the need for

private damages actions.  *Cf. Olsen*, 363 F.3d at 924–25.

#### c)        Insulation from Political Influence

The Board consists of twelve members appointed by the Governor of Oregon.  Or. Rev.

Stat. § 677.235(1).  Each member of the Board serves for a term of three years, and no member

may serve more than two consecutive terms.  *Id*. § 677.235(3).  The Board includes public

14 – OPINION AND ORDER

members representing health consumers. *Id*. § 677.235(1)(d). The presence of these public members diminishes the risk that the Board will make decisions based on financial self-interest. *Olsen*, 363 F.3d at 925. In light of the totality of these procedural safeguards, the Board and its members are sufficiently insulated from political pressures.

### d)    Precedent, Adversary Nature, and Correctibility

The Oregon Court of Appeals applies precedent upon judicial review of a Board order. Or. Rev. Stat. § 183.482. Moreover, the contested case hearings that are required when the Board disciplines licensees are sufficiently adversarial in nature. As noted above, in a contested case hearing, a licensee has the right to representation by counsel, the right to present evidence and arguments on the issues, and the right to cross-examine witnesses and present rebuttal evidence. *Id*. §§ 183.417(1), 183.450(3). Finally, the Court of Appeals has authority to correct any errors through judicial review. *Id*. §§ 183.480, 183.482.

Upon consideration of Oregon's comprehensive statutory scheme, I find that the Board members generally function in capacities sufficiently analogous to those of a judge or prosecutor to entitle them to absolute immunity under *Butz*.

### e)    Scope of Immunity

Once the Court establishes that a state official generally functions in capacities analogous to those of a judge or prosecutor, it must then determine whether the specific actions at issue in the case "are judicial or closely associated with the judicial process." *Mishler*, 191 F.3d at 1007. Only acts closely associated with the judicial process are entitled to absolute immunity. *Id*. As in *Olsen*, each of Mr. Read's allegations against defendants are "directly related to their adjudicatory function and the ultimate resolution of the disciplinary dispute at issue." 363 F.3d at 928. Mr. Read only asserts claims arising out of the members' participation in the Board's

disciplinary efforts.  Therefore, all members of the Oregon Medical Board are entitled to absolute immunity on Mr. Read's due process claim.

### 3.    Mr. Foote

An attorney in the Attorney General's Office is immune from lawsuits for any action he commits while discharging his official litigation-related duties, whether sued in his official or individual capacity.  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  This immunity does not extend, however, to actions that are "wholly unrelated to or outside of [the attorney's] official duties."  *Id.*

In this case, Mr. Foote is listed as a defendant in his individual capacity.  (Compl. [1] at 3.)  But Mr. Read's sole allegation against Mr. Foote—that he falsified the record at the ALJ hearing—relates exclusively to actions that Mr. Foote allegedly performed while discharging his official duties as a Senior Assistant Attorney General.  As a result, Mr. Foote is entitled to absolute immunity on Mr. Read's due process claim, too.

### 4.    Unknown Employee(s) of the Oregon Medical Board

Finally, Mr. Read has also filed suit against "Unknown Oregon Medical Board employee(s) or consultants, in individual capacity, not official capacity—employed by the Oregon Medical Board at relevant times, whether paid or not paid for services."  (Compl. [1] at 4.)  It is unclear whether these unknown employees engaged in quasi-judicial or quasi-prosecutorial acts, so it is also unclear whether they are entitled to absolute immunity.

Instead, I find that Mr. Read has failed to state a proper claim against these unknown employees.  As discussed above in Part I, the only claims over which the Court has jurisdictions are claims based on extrinsic fraud.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Furthermore, where a

complaint includes allegations of fraud, Rule 9(b) requires greater specificity, "including an

account of the 'time, place, and specific content of the false representations as well as the

identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764

(9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).

Mr. Read does not meet this standard. He fails to identify the alleged fraudsters and fails

to allege any facts to support a claim of fraud against an employee of the Board. Therefore, Mr.

Read's due process claim against these unknown employees is dismissed for failure to comply

with Rule 9(b).

## CONCLUSION

Based on the foregoing, I GRANT defendants' motion to dismiss [8].

Mr. Read's claims against all defendants based on the First Amendment; Article I,

Section 10 of the United States Constitution; and the Equal Protection Clause of the Fourteenth

Amendment are DISMISSED WITH PREJUDICE for lack of jurisdiction.

Mr. Read's state law fraud claim against all defendants is DISMISSED WITH

PREJUDICE on immunity grounds.

Mr. Read's due process claim against all defendants except the unnamed employees of

the Oregon Medical Board is also DISMISSED WITH PREJUDICE on immunity grounds.

Mr. Read's due process claim against unnamed employees of the Oregon Medical Board

is DISMISSED WITHOUT PREJUDICE for failure to comply with Rule 9(b).

IT IS SO ORDERED.

DATED this  10  day of April, 2013.

 /s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge